**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| ORIX USA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:15-cv-00170 |
| | § | |
| PRESTON HOLLOW CAPITAL, LLC, | § | Jury Trial Demanded |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

David Folsom
Texas State Bar No. 07210800
Email: dfolsom@jw.com
6002 Summerfield, Suite B
Texarkana, Texas 75503
(903) 255-3250
(903) 255-3265 – Fax

Charles L. Babcock
Lead Attorney
Texas State Bar No. 01478500
Email: cbabcock@jw.com
Carl C. Butzer
Texas State Bar No. 03545900
Email: cbutzer@jw.com
Lauren E. Mutti
Texas State Bar No. 24050042
Email: lmutti@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 – Fax

Nancy W. Hamilton
Texas State Bar No. 11587925
Email: nhamilton@jw.com
John K. Edwards
Texas State Bar No. 24002040
Email: jedwards@jw.com
Joel R. Glover
Texas State Bar No. 24087593
Email: jglover@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

Of Counsel:
George L. McWilliams
Texas State Bar No. 13877000
Law Office of George L. McWilliams, P.C.
Post Office Box 58
Texarkana, Texas-Arkansas 75504
Telephone: (870) 772-2055
Facsimile: (870) 772-0513
Email: glmlawoffice@gmail.com

**ATTORNEYS FOR PLAINTIFF ORIX USA CORPORATION**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT AND AUTHORITIES..................................................................2

    A.    O-USA's Choice of Forum and the "Operative Facts."............................3

    B.    Private Factors ...........................................................................................7

        (1)    Relative Ease of Access to Sources of Proof ...............................7

        (2)    The Availability of Compulsory Process to Secure the Attendance of Witnesses .................................................................................10

        (3)    The Cost of Attendance for Willing Witnesses .........................10

    B.    The Public Factors. ..................................................................................13

        (1)    The Administrative Difficulties Flowing from Court Congestion.............13

        (2)    The Local Interest in Having Localized Interests Decided at Home .........14

        (3)    The Familiarity of the Forum with the Law that Will Govern the Case....15

III.    CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Frito-Lay North Am., Inc. v. Medallion Foods, Inc.*,
  867 F. Supp. 2d 859 (E.D. Tex. 2012) ................................................................7, 9

*Healthpoint, Ltd. v. Derma Scis., Inc.*,
  939 F. Supp. 2d 680 (W.D. Tex. 2013) ...............................................................7, 8

*Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*,
  85 F. Supp. 2d 663 (S.D. Tex. 1999) ......................................................................14

*Konami Dig. Ent. Co. v. Harmonix Music Sys.*,
  No. 6:08-CV-286-LED-JEL, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ............9

*Ledoux v. Isle of Capri Casinos, Inc.*,
  218 F. Supp. 2d 835 (E.D. Tex. 2002) ...................................................................15

*Mohamed v. Mazda Motor Corp.*,
  90 F. Supp. 2d 757 (E.D. Tex. 2000) .......................................................................8

*Nexus Display Technologies LLC v. Dell, Inc.*,
  No. 2:14–CV-762, 2015 WL 5043069 (E.D. Tex. Aug. 25, 2015) ...............10, 11, 13, 15

*Parsons v. Chesapeake & Ohio Ry. Co.*,
  375 U.S. 71 (1963) ...................................................................................................1

*Perritt v. Jenkins*,
  No. 4:11-CV-23, 2011 WL 3511468 (E.D. Tex. July 18, 2011) ............................10

*Quad Powerline Techs. LLC v. TRENDnet, Inc.*,
  No. 2:14-cv-1169-JRG-RSP, 2015 WL 4911094 (E.D. Tex. Aug. 17, 2015) ....4, 10

*Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*,
  435 F. Supp. 2d 578 (E.D. Tex. 2006) ...................................................................10

*Spiegelberg v. Collegiate Licensing Co.*,
  402 F. Supp. 2d 786 (S.D. Tex. 2005) ...................................................................15

*Symbol Techs., Inc. v. Metrologic Instruments, Inc.*,
  450 F. Supp. 2d 676 (E.D. Tex. 2006) .................................................................8, 12

*Texas Marine & Brokerage, Inc. v. Euton*,
  120 F. Supp. 2d 611 (E.D. Tex. 2000) .....................................................................7

*Think Tank One Research, LLC v. Energizer Holdings, Inc.*,
No. M-15-0389, 2015 WL 4116888 (E.D. Tex. July 7, 2015) ....................................... *passim*

*TracBeam, LLC v. Apple, Inc.*,
No. 6:14-CV-680, 2015 WL 5786449 (E.D. Tex. Sept. 29, 2011).........................................10

*Tran Enterprises, LLC v. Dao*,
No. H:10-1347, 2010 WL 5092968 (S.D. Tex. Dec. 7, 2010).................................................6

*In re Triton Ltd. Secs. Litig.*,
70 F. Supp. 2d 678 (E.D. Tex. 1999) ..............................................................................12, 15

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ..........................................................................................3, 10

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) .........................................................................*passim*

*Woolf v. Mary Kay Inc.*,
176 F. Supp. 2d 642 (N.D. Tex. 2001) ...................................................................................10

*Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*,
331 F. Supp. 2d 567 (E.D. Tex. 2004).................................................................3, 10, 12, 13

**Federal Statutes**

15 U.S.C. § 1051 *et seq*...........................................................................................................3, 6

28 U.S.C. 1391 ...................................................................................................................3, 4, 5

28 U.S.C. § 1338...........................................................................................................................3

28 U.S.C. § 1404(a) .........................................................................................................1, 3, 8, 15

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.....................................................................2, 6

**Rules**

Fed. R. Civ. P. 26......................................................................................................................8

Fed. R. Civ. P. 32(a)(4)............................................................................................................13

Rule 45 ........................................................................................................................................13

**Other Authorities**

6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, §
32:63, at 32–153 (4th ed. 2010) ...........................................................................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| ORIX USA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:15-cv-00170 |
| | § | |
| PRESTON HOLLOW CAPITAL, LLC, | § | Jury Trial Demanded |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

Plaintiff ORIX USA Corporation ("O-USA") files this its Opposition to the motion to transfer this case from the Eastern District of Texas to the Northern District of Texas pursuant to 28 U.S.C. §1404(a) (the "Motion," ECF 14) filed by Defendant Preston Hollow Capital, LLC ("Defendant" or "PHC"), and in support thereof shows the following:

## I.  INTRODUCTION

Having conceded that venue is proper in this district, PHC moves to transfer this case to Dallas "for convenience" but the district court has "broad discretion" in weighing the convenience factors and judicial economy concerns that bear on this exercise.  *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  Due to the October 24, 2016 trial date (ECF 16), it is irrefutable that the case will be disposed of faster here than in the Northern District of Texas.  Indeed, the Supreme Court has said that the condition of the court's docket is "an important factor."  *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963).  This factor alone justifies retention of this case in the Eastern District, but there is, of course more and PHC has failed to carry its burden with respect to any of the private or public convenience factors informing the Court's analysis.

PHC claims "it is not an overstatement to state that virtually all the evidence and

witnesses related to this lawsuit exist within a single Dallas city block," (ECF 14 at 4); forgetting, perhaps, that its illegal, infringing and tortious activities were initiated by one of PHC's principal agents, John Dinan, who at the time was Senior Legal Counsel for O-USA *and a resident of the Eastern District* when he filed PHC formation papers with the State of Delaware and applied for trademarks with the United States Patent & Trademark Office ("USPTO") from his Eastern District of Texas residence in Athens, Texas *and established that address* as PHC's address for notices to and from the USPTO, the IRS and the Texas Secretary of State.  Even today, USPTO records reflect that the current address of PHC is "5569 Impala South, Athens, Texas 75752."  Exh. 7 to Exh. B, Declaration of Kathleen M. Adair.  Indeed, there is also evidence indicating that PHC's tortious conduct continued from PHC's Eastern District address well into 2014, when Dinan used his O-USA issued computer to access, analyze, and otherwise handle documents that reflected O-USA's confidential and proprietary information for the benefit of PHC, in violation of the Federal Computer Fraud and Abuse Act ("CFAA") and O-USA's corporate policies.

This lawsuit, therefore, is not limited to "a single Dallas city block" but instead calls into serious question the reputations and conduct of persons and a business that work and conduct business in the Eastern District.  There are other Eastern District witnesses and activities as we describe below all toward the end of demonstrating that Plaintiff is unable to meet the burden placed on the moving defendant to "clearly demonstrate that a transfer is for the convenience of parties and witnesses in the interest of justice."  *Volkswagen II*, 545 F.3d at 315 (5th Cir. 2008) (*en banc*) (internal quotation marks omitted). In short, there is no credible evidence that Defendant has presented which would justify transfer.

## II.   ARGUMENT AND AUTHORITIES

This civil action is founded on federal question jurisdiction under the Computer Fraud

and Abuse Act, 18 U.S.C. § 1030 and the Lanham Act, 15 U.S.C. § 1051 *et seq*.  Thus, this Court

has original jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

Venue is proper under 28 U.S.C. 1391 as PHC concedes by filing under 28 U.S.C. § 1404(a), a

motion directed to the Court's discretion.

To prevail on a Section 1404(a) motion to transfer, the moving defendant must satisfy the

statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of the

parties and witnesses and in the interest of justice."  *Volkswagen II*, 545 F.3d at 315.  Courts

analyze both public and private factors, none of which has dispositive weight.  *Id.*[1]  "The

defendant may not rely on unsupported assertions regarding the convenience factors, but 'must

properly establish relevant venue facts' by presenting evidence in support of transfer" by

affidavit, deposition or otherwise.  *Think Tank One Research, LLC v. Energizer Holdings, Inc.*,

No. M-15-0389, 2015 WL 4116888, at *1 (E.D. Tex. July 7, 2015); *see also Z-Tel Commc'ns,*

*Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004).

The ultimate decision whether to transfer a case pursuant to 28 U.S.C. §1404(a) is within

the sound discretion of the district court and will be reviewed only for clear abuses of discretion

that produce patently erroneous results.  *See Volkswagen II*, 545 F.3d at 312.  Unless the

proposed transfer venue is clearly more convenient than the plaintiff's chosen venue, "the

plaintiff's choice should be respected."  *Id.* at 315.

### A.      O-USA's Choice of Forum and the "Operative Facts."

PHC argues that O-USA's choice of forum is not entitled to deference because O-USA is

---

[1] Generally, the private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*  The factors are not exhaustive or exclusive and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314–15.

a non-resident and that all the operative facts occurred exclusively in the Northern District.  ECF 14 at 9–10 (*citing* 28 U.S.C. § 1391(c)(2)).  PHC is wrong on the law and the facts.  Since *Volkswagen II,* the plaintiff's choice of venue is not a factor in the analysis; rather, the importance of a plaintiff's choice is taken into account by the *significant burden placed on the moving defendant* to show that the transferee venue is "clearly more convenient" than the transferor venue.  *See id.*; *ThinkTank One Research, LLC,* 2015 WL 4116888, at *1; *Quad Powerline Techs. LLC v. TRENDnet, Inc.*, No. 2:14-cv-1169-JRG-RSP, 2015 WL 4911094, at *1 (E.D. Tex. Aug. 17, 2015).

Next, PHC falsely states that <u>all</u> the "operative facts' occur in Dallas because that is "'where the marketing and sales decisions occurred' concerning the product or service at issue." ECF 14 at 9–10.  PHC's only support for this statement is James Thompson's Declaration which states only that "all of [PHC's] marketing decisions—including decisions relating to the content of [PHC's] website—occur or have occurred at [its] principal place of business in Dallas, Texas."  ECF 14-1 at ¶ 6.  Thompson's Declaration is devoid of facts, is conclusory, and lacks foundation and, therefore, is insufficient to support of transfer.  *See Think Tank One Research, LLC*, 2015 WL 4116888, at *1.  No facts are given to support such conclusions and no foundation is laid to inform the Court as to how Thompson knows this or is qualified to arrive at such a conclusion.

This conclusory assertion does not begin to establish that "all operative facts" occurred in Dallas.  In fact, the facts are decidedly to the contrary, and PHC cannot run from them now.  In the fall of 2013 and thereafter Thompson and Dinan were acting as agents and employees of PHC.  *See* Plaintiff's First Amended Complaint ("FAC"), ECF 18 at ¶ 2.  PHC was their

principal and employer.[2]  Dinan, who was O-USA's Senior Legal Counsel and Director at the time, filed applications on behalf of Preston Hollow Capital and Preston Hollow Advisors, identifying the address of those entities as 5569 Impala South, Athens, Texas 75752.  *See* Exhs. 7 thru 12 to Exh. B; Exh. 1 to Exh. E, Declaration of Robert Lenhardt.  The 5569 Impala South, Athens, Texas, 75752 address is in the Eastern District of Texas.  *See* Exhs. 1 and 2 to Exh. B. Those applications were to: (1) the Texas Secretary of State as the organizer of Preston Hollow Advisors, LLC ("PHA") (*see* Exh. 12 to Exh. B); (2) the IRS (*see* Exh. 1 to Exh. E); (3) the State of Delaware for a Certificate of Formation (*see* Exh. 1 to Exh. E); (4) the USPTO (*see* Exhs. 10 and 11 to Exh. B); and (5) a Trademark Assignment Cover Sheet dated April 16, 2015 (*see* Exh. 8 to Exh. B).  Indeed, as recently as October 23, 2015, PHC filed a Trademark/Service Mark Amendment to Allege Use with the USPTO showing its address as 5569 Impala South, Athens, Texas, and USPTO records reflect that is its address even today.  *See* Exh. 9 to Exh. B. Accordingly, PHC maintains a business address in the Eastern District and, thus, is a resident of the Eastern District.  *See, e.g.*, 28 U.S.C § 1391(d).

On October 25, 2013, John Dinan, executed the Certificate of Formation for PHC with the Delaware Secretary of State.  *See* Exh. 1 to Exh. E.  On November 19, 2013, Dinan made an application for an Employer Identification Number ("EIN") with the Internal Revenue Service ("IRS") for PHC, again using the 5569 Impala South, Athens, Texas Henderson County, Texas address.  *See* Exh. 1 to Exh. E.  Dinan made a similar application with the IRS for an EIN for Preston Hollow Advisors ("PHA") that same date with the same Athens, Texas address.  *See* Exh. 1 to Exh. E.  On November 18, 2013, Dinan, as the <u>sole member</u> and <u>registered agent</u>, created and established PHA as a Texas limited liability company with its registered office at

---

[2] For example, Dinan signed the Delaware Certificate of Formation dated October 25, 2013, in his "capacity as an authorized agent" for PHC.  *See* Exh. 1 to Exh. E.

5569 South Impala, Athens, Texas.  *See* Exh. 12 to Exh. B.  PHC and PHA's purpose was to own, hold and manage equity interests in one or more limited liability companies and/or limited partnerships and to conduct any other business for which a limited liability company may be organized under the laws of Texas and Delaware.  *See* Exh. 3 to Exh. E.  On December 17, 2013, PHC's Limited Liability Agreement was adopted by PHA as the sole member.  *See* Exh. 3 to Exh. E.  The sole member of PHC was PHA and James Thompson was the manager.  *Id.* at ¶ 5.1.  At that time, Thompson, who did not terminate his employment from O-USA until December 31, 2013, was still CEO of O-USA.

Additionally, Dinan, who lived at his Athens residence, used his O-USA computer to access, analyze, and otherwise handle documents that reflected O-USA's confidential and proprietary information for the benefit of PHC in violation of the Federal Computer Fraud and Abuse Act ("CFAA") and O-USA's corporate policies.  As executives of O-USA, Dinan and Thompson had signed and acknowledged Key Employee Non-Solicitation Agreements and Acknowledgments and agreed to O-USA's Code of Ethics and Confidentiality and Data Security policies.  *See* Exhs. 1 and 2 to Exh. D, Declaration of Cindy Willman.  Those agreements contain pertinent information concerning conflicts of interest, taking business opportunities and use of confidential information.  *Id.*

Also, O-USA's FAC alleges causes of action for tortious interference with contracts, unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), state law trademark infringement and unfair competition, and conversion.  *See* ECF 18.  "Infringing acts under the Lanham Act typically are held to take place 'not only where the infringing labels are affixed to the goods, but where confusion of purchasers occurs.'"  *Tran Enterprises, LLC v. Dao*, No. H:10-1347, 2010 WL 5092968, at *4 (S.D. Tex. Dec. 7, 2010) (citing 6 J. Thomas McCarthy, McCarthy on

TRADEMARKS & UNFAIR COMPETITION, § 32:63, at 32–153 (4th ed. 2010); *see also Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp. 2d 611, 612–13 (E.D. Tex. 2000). Here, PHC's press releases and its website form the basis, in part, of O-USA's Lanham Act claim. *See* ECF 18. Those press releases were part of PHC's nationwide campaign, which included distribution into the Eastern District of Texas, as is the PHC website. *See* Exh. F, Declaration of James M. Smith, at ¶ 3. Thus, the facts belie PHC's strident and spurious allegation that all the operative facts occurred exclusively in the Northern District and further that "the sole reason" for this lawsuit is gamesmanship. *See* ECF 14 at 9-10.[3]

Accordingly, PHC has substantial connections to the Eastern District of Texas and substantial events giving rise to this litigation occurred in the Eastern District of Texas making this district a logical one in which to bring suit. *See, e.g.*, *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 686 (W.D. Tex. 2013). Here, as the court noted in *Healthpoint*, even though O-USA did not file suit in its home venue, PHC "must still demonstrate that the [transferee district] is a 'clearly more convenient' venue than the [transferor district]." *Id.* at 686.

We now address the convenience factors.

### B.      Private Factors

**(1)      *Relative Ease of Access to Sources of Proof.*** Historically, courts have analyzed "this factor in light of the distance that documents, or other evidence must be transported from their existing location to the trial venue." *Frito-Lay North Am., Inc. v. Medallion Foods, Inc.*,

---

[3] PHC labels this lawsuit "litigation gamesmanship" (ECF 14 at 10) and "cynical" (ECF 14 at 7 n.2) citing a letter from O-USA's general counsel, Ron Barger (Exh. B. Patton Decl. ¶ 8 & Exh. 1) ("The Barger Letter") to Mike Lynn founding partner of Lynn, Tillotson, Pinker and Cox ("LTPC"), PHC's lawyer in this case. The Barger Letter explained that LTPC had a potential conflict of interest because it and Mr. Lynn had represented O-USA on substantially related matters over a four year period ending in 2013 during which they billed O-USA over $4,000,000. Exh. 1 to Exh. C, Declaration of Lauren E. Mutti. The Barger Letter raised a serious issue and was certainly not "gamesmanship" or an act of cynicism. Mr. Lynn responded to the Barger Letter threatening to file a grievance against him and sanctions against his former client and its counsel if they made a motion to disqualify. *See* Exh. 2 to Exh. C. Mr. Barger responded on November 13, 2015 asking, among other things, that all of O-USA's documents in LTCP's possession be returned. Exh. 3 to Exh. C. To date these documents have not been provided.

867 F. Supp. 2d 859, 869 (E.D. Tex. 2012).  While modern technology makes it easier to access certain sources of proof than in the past, the Fifth Circuit has counseled against reading this requirement out of the Section 1404(a) analysis.  *Volkswagen II*, 545 F.3d at 316.  That said, "[a]ny documents stored in a non-electronic format will, if relevant to this lawsuit, need to be copied during discovery and can be transported easily to the Eastern District of Texas." *ThinkTank One*, 2015 WL 4116888, at *2.  Additionally, the mandatory disclosure requirement of Federal Rule of Civil Procedure 26 requires each party to provide:

> (ii) a copy or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control, and may use to support its claims or defenses, unless the use would be solely for impeachment.

FED. R. CIV. P. 26(a)(1)(A)(ii); *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000).  Most, if not all, documents produced in this litigation and for trial will be exchanged and maintained in electronic format.  Exh. C, Declaration of Lauren Mutti, at ¶ 2.

Relying on a conclusory statement from the Thompson Declaration, that all "Preston Hollow documents related to the allegations in this lawsuit are all located in Dallas, Texas," PHC contends that this factor weighs heavily in favor of transfer.  *See* ECF 14 at 11–12 & ECF 14-1 at ¶ 6.  Thompson's statement, however, lacks foundation, is conclusory and fails to inform the Court of the specific types of documents, volume or the significance of the documents (evidentiary value) to the litigation.  *Id.*  PHC has also failed to explain how transferring this case to the Northern District would reduce the burden of producing the necessary documents, which are likely to be exchanged electronically.  *See Healthpoint*, 939 F. Supp. 2d at 689 (finding this factor neutral where the movant failed to explain how transferring the case would reduce the burden of producing the necessary documents); *see Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 678 (E.D. Tex. 2006) (finding that this factor did not

weigh in favor of transfer where the movant did not explain how transfer would make document production less burdensome and where the documents were likely to be exchanged electronically).   Consequently, PHC has not properly established relevant venue facts on this factor and, therefore, has failed to show that this factor is entitled to any weight.  *See Think Tank One Research, LLC*, 2015 WL 4116888, at *1.

Furthermore, as we've shown, relevant and material documents are likely to be found at the 5569 Impala South, Athens, Texas address *not* Dallas.  Additionally, there are third parties from whom O-USA expects to obtain depositions and discovery, including Ovis Creative and First Eagle Investment Management in New York, New York, and Broe Group in Denver, Colorado.  *See* Exh. A, Declaration of Charles L. Babcock, at ¶ 4.  On information and belief, PHC's agents sent these non-parties O-USA confidential and proprietary information in the form of a "pitch book" containing O-USA's track record information, historical performance, market analysis, and touting a "Highly Experienced Team" consisting of twenty (20) O-USA executives (including Dinan and Benitez who reside in the Eastern District) and their biographies to PHC's potential business partners, investors and vendors.  We anticipate that these non-party out-of-state witnesses will have correspondence and other documents that are relevant and material to O-USA's Lanham Act, misappropriation of confidential business information, conversion, and tortious interference with contract claims.  *Id*.

Because PHC has failed to provide any substantive information regarding the type or volume of its documents <u>and</u> because the sources of proof in this case likely originate from varied locations, including the Eastern District, this factor is neutral.  *See Frito-Lay North Am., Inc.*, 867 F. Supp. 2d at 869; *see also Konami Dig. Ent. Co. v. Harmonix Music Sys.*, No. 6:08-CV-286-LED-JEL, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point

to [the transferee district] as the location for significant sources of proof, they ignore the remaining sources of proof which originate from other locations."); *Perritt v. Jenkins*, No. 4:11-CV-23, 2011 WL 3511468, at *3 (E.D. Tex. July 18, 2011) (same holding).

(2)     *The Availability of Compulsory Process to Secure the Attendance of Witnesses*.

PHC concedes the availability of compulsory process to secure attendance of witnesses factor is "neutral" in this analysis. *See* ECF 14 at 13.

(3)     The Cost of Attendance for Willing Witnesses.

In analyzing this factor, all parties and witnesses must be considered. *TracBeam, LLC v. Apple, Inc.*, No. 6:14-CV-680, 2015 WL 5786449, at *5 (E.D. Tex. Sept. 29, 2011) (citing "*Volkswagen I*"). District courts "should assess the relevance and materiality of the information the witness may provide." *Quad Powerline Techs. LLC*, 2015 WL 4911094, at *3 (internal quotation marks omitted). The movant "must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover." *ThinkTank One Research*, 2015 WL 4116888, at *2 (quoting *Z-Tel*, 331 F. Supp. 2d at 574). "Courts have 'uniformly refused to let applications for transfer become a battle of numbers.'" *Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F. Supp. 2d 578, 591 (E.D. Tex. 2006) (quoting *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001)).

PHC, citing *Volkswagen II*, argues, without more, that there is approximately 180 miles between Dallas and Texarkana and that if trial were to take place in Texarkana, all witnesses would have to travel to Texarkana. ECF 14 at 13. While the Fifth Circuit established a "100 mile rule" to assist with the analysis, this Court has also noted that "*Volkswagen* did not teach that additional distance and travel time are the end of the story." *See Z-Tel Commc'ns.*, 331 F. Supp. 2d at 575; *Nexus Display Technologies LLC v. Dell, Inc.*, No. 2:14–CV-762, 2015 WL

5043069, at *3 (E.D. Tex. Aug. 25, 2015).  PHC lists nine (9) individuals from Preston Hollow. *See* ECF 14-2 at ¶ 9.   PHC, however, does not state the relevance or materiality of the information each witness may provide.   *See id*.   The statement that "[g]iven the places of residence of the witnesses identified above, the . . . Northern District of Texas would be more convenient than . . . the Eastern District" is wholly conclusory, unsupported and of no consequence because the declaration does not state *the residence of any witness*.  *See* ECF 14-2 at ¶ 13; *see ThinkTank One Research*, 2015 WL 4116888, at *1 ("The defendant may not rely on unsupported assertions regarding the convenience factors . . . .").   PHC also fails to state unequivocally that each witness's regular place of business is offices in Dallas.  *See, e.g*., ECF 14-2 at ¶ 9.  The mere fact that PHC maintains offices in Dallas is of no moment in this age of tele-commuting and work from home or other locations, as we've seen with Dinan working from his Athens, Texas residence, and there is no evidence that PHC's employee witnesses actually office in Dallas—only that that is where PHC's principal place of business is located.  *See id.*

Consequently, in stark contrast to the affidavits submitted in *Volkswagen II*, PHC has offered *no* information concerning the residence or relevance or materiality of any of its employee witness's testimony or the inconvenience, if any, associated with having to travel to testify in Texarkana.  *See Volkswagen II*, 545 F.3d at 317.[4]  Additionally, PHC lists only party witnesses, and there is no suggestion that they are unwilling or unable to attend trial in Texas.  It does not identify a single non-party witness it anticipates calling to trial, except perhaps Brian Prince, whose testimony PHC acknowledges can be handled via deposition.  *See* ECF 14-2 at

---

[4] In *Volkswagen II*, a design defect case brought by an injured motorist and passenger against the automobile manufacturer for injuries suffered in a collision on a Dallas freeway, the Fifth Circuit pointedly addressed "the cost of attendance for willing witnesses," particularly third party defendant and accident investigators, treating medical personnel and the medical examiner—all of whom resided in Dallas County or the Dallas area supported by affidavits asserting that travelling to the Marshall Division would be inconvenient and that Volkswagen also asserted that the testimony of these witnesses and an accident investigator was critical to determining causation an liability in the case.  *Id.* at 317.

¶ 12.

PHC lists four (4) witnesses from O-USA.  *See* ECF 14-2 at ¶ 10.  O-USA anticipates calling Andrew Garvey and Paul Wilson as witnesses who will commit to appearing voluntarily to testify at trial in Texarkana.  *See* Exh. A at ¶¶ 2(a) and (b).  O-USA also identifies three residents of the Eastern District of Texas (Dinan, Benitez and Pickle) whom it intends to call to testify at trial, live or by deposition, if necessary.  *See* Exh. A at ¶ 3 and Exh. B at ¶¶ 2–7.  O-USA has provided a general statement of what its witnesses' anticipated testimony will cover.  *See* Exh. A at ¶ 2.  Furthermore, since O-USA chose to file suit here and the above-named witnesses are willing to travel to Texarkana for trial, the Court should assume this forum is convenient for O-USA and its witnesses.  *See Symbol Techs. Inc.,* 450 F. Supp. 2d at 678.

PHC also argues *it* will be inconvenienced if trial is in Texarkana because *it* "lacks sufficient back-up personnel to replace witnesses that would be required to miss two working days to travel to and testify at trial in Texarkana."  This argument is also of no moment because it is once again wholly conclusory.  *See* ECF 14 at 13 (citing the Thompson Declaration at ECF 14-1 at ¶ 7).  The Thompson Declaration lacks foundation: it does not identify who the witnesses are who may need backup or why, explain how Mr. Thompson arrived at such a conclusion and further fails to state how many people PHC employs, whether they are all likely to be witnesses, what their positions are, whether they are key employees, why their expected testimony would be material or relevant, the costs associated with such an inconvenience or even how he arrived at the two day calculation for travel and to testify at trial in Texarkana.  *See* ECF 14-1 at ¶ 7.  PHC, therefore, "has failed to sufficiently separate the inconvenience specific to 'work and home responsibilities' from general inconvenience intrinsic to litigation."  *See Z-Tel*, 331 F. Supp. 2d at 575; *In re Triton Ltd. Secs. Litig.*, 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999) (holding that

defendants' argument was not persuasive that it would have a difficult or burdensome time in producing its own employees for testimony in the Eastern District).  As this Court has observed "[t]here is no doubt that litigation taxes the resources of defendant companies.  This reality is an unfortunate, but ineluctable, by product of the civil justice system."  *Z-Tel*, 331 F. Supp. 2d at 575.

Additionally, this Court has noted that the amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business.  *See Nexus Display Technologies LLC*, 2015 WL 5043069, at *4.  The proffering party now has the option to depose the witness near that witness's residence or regular place of business, and later present that witness's deposition testimony at trial.  *Id*.; *see* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial . . . .").  A videotape deposition is an acceptable substitute for live testimony and parties are not seriously inconvenienced if they know beforehand that depositions will be used at trial.  *See id*.

In sum, the "proof" offered by PHC of the inconvenience of its witnesses does not help this Court determine if attendance at trial will likely be such that the inconvenience, if any, associated with their travel to Texarkana weighs heavily in the analysis.  *See Z-Tel*, 331 F. Supp. 2d at 574.  PHC has failed to carry its burden to show that this factor weighs in favor of transfer.  PHC does not address any other private factors in its motion.

**B.      The Public Factors.**

**(1)      *The Administrative Difficulties Flowing from Court Congestion*.**   "When considering a . . . motion to transfer, a prompt trial . . . is not without relevance to the

convenience of parties and witnesses and the interest of justice." *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 670–71 (S.D. Tex. 1999) (internal quotation marks omitted). Trial is set in this case for October 24, 2016 (ECF 16 at 2), an important factor against transfer.

The only information PHC offers on this factor is a link to an October 29, 2013 letter complaining of high caseloads in the Eastern District of Texas. *See* ECF 14 at 14. In fact, current information from both the Northern District and Eastern District of Texas shows that overall the number of pending cases in the Eastern District is 5,794 whereas there are 13,176 in the Northern District.[5] There are fewer pending cases per judge in the Eastern District (724) than in the Northern District (1,098) and the percentage of civil cases over three (3) years old in the Northern District (14.7) is nearly three times the number in the Eastern District (5.5). Consequently, it is highly unlikely that this case will get to trial in the Northern District before October 24, 2016. This factor favors denying transfer.

(2)   ***The Local Interest in Having Localized Interests Decided at Home***.  PHC contends that the Northern District has a local interest in adjudicating this dispute. ECF 14 at 14. As we've shown, PHC's statement that "the litigation centers around events that occurred almost entirely within that building" is unsupported and demonstrably false. As we've shown, PHC is a resident of the Eastern District with an active Eastern District address, and its agents reside in and conducted its business from the Eastern District as well. Furthermore, as we have also shown, there is evidence to support that significant and substantial acts giving rise to the CFAA,

---

[5] *See* "Federal Court Management Statistics, June 2015" last updated on June 30, 2015. The web address is http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015. The chart itself is entitled "Federal Court Management Statistics-Comparison Within Circuit" and was created on June 30, 2015. The web address to download the pdf is http://www.uscourts.gov/file/18453/download. The NDTX statistics are found on page 5 of the chart. The document entitled "Explanation of Selected Terms," which provides the definition of "from filing to trial (civil only)," is also found on the Federal Court Management Statistics page cited above. The direct link to download the document is http://www.uscourts.gov/file/document/explanation-selected-terms. It was last updated in September 2014.

Lanham Act, unfair competition, tortious interference with contract, and conversion causes of action took place in the Eastern District.  The Eastern District of Texas and its citizens, therefore, have a significant relationship to this litigation and local interest in its outcome because this suit calls into question the reputation and business conduct of its residents who live, work and conduct business in the community.  *See Nexus Display Techs. LLC*, 2015 WL 5043069, at *5.

Accordingly, PHC's reliance on *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005), for its conclusory and erroneous statement that Dallas is the only location with a local interest is misplaced.  To the contrary, the people in the Eastern District of Texas have an interest in adjudicating this dispute because PHC advertised in the Eastern District.  *See Ledoux v. Isle of Capri Casinos, Inc.*, 218 F. Supp. 2d 835, 838 (E.D. Tex. 2002); *In re Triton*, 70 F. Supp. 2d at 691 (citizens of the Eastern District of Texas have a substantial interest in correcting wrongdoing on the part of companies who trade stocks on a national basis).  Because the citizens of the Eastern District have a substantial interest in the outcome of this litigation, this factor weighs against transfer.

**(3)**    ***The Familiarity of the Forum with the Law that Will Govern the Case.***  PHC concedes this factor is neutral.  ECF 14 at 14–15.

PHC does not address any other factors in its analysis.

### III.    <u>CONCLUSION</u>

Defendant Preston Hollow Capital LLC has not shown that the Northern District of Texas would be "clearly more convenient" than the Eastern District of Texas.  The motion to transfer pursuant to Section 1404(a) should, therefore, be denied.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Nancy W. Hamilton*

David Folsom
Texas State Bar No. 07210800
Email: dfolsom@jw.com
6002 Summerfield, Suite B
Texarkana, Texas 75503
(903) 255-3250
(903) 255-3265 – Fax

Charles L. Babcock
Lead Attorney
Texas State Bar No. 01478500
Email: cbabcock@jw.com
Carl C. Butzer
Texas State Bar No. 03545900
Email: cbutzer@jw.com
Lauren E. Mutti
Texas State Bar No. 24050042
Email: lmutti@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 – Fax

Nancy W. Hamilton
Texas State Bar No. 11587925
Email: nhamilton@jw.com
John K. Edwards
Texas State Bar No. 24002040
Email: jedwards@jw.com
Joel R. Glover
Texas State Bar No. 24087593
Email: jglover@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax

Of Counsel:
George L. McWilliams
Texas State Bar No. 13877000
Law Office of George L. McWilliams, P.C.
Post Office Box 58
Texarkana, Texas-Arkansas 75504
Telephone: (870) 772-2055
Facsimile: (870) 772-0513
Email: glmlawoffice@gmail.com

**ATTORNEYS FOR PLAINTIFF ORIX USA
CORPORATION**


## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 21, 2015, a true and correct copy of the foregoing instrument was served via the Court's Electronic Filing System on all counsel of record.

<u>*/s/ Nancy W. Hamilton*</u>
Nancy W. Hamilton